Good afternoon, Illinois Appellate Court, 1st District Court is now in session, 1st Division. The Honorable Justice Carl Anthony Walker presiding, case number 1-7-3104, People v. Marcus Monroe. Good afternoon, everybody. I'm Justice Walker, and I have here with me Justice Hyman and Justice Pierce. And I'd like to have the attorneys who will be arguing to please identify yourselves. Hi, I'm Jonathan Krieger, I'm here on behalf of Marcus Monroe. Good morning, Your Honor, Zachary Slavens on behalf of the people of the state of Illinois. Thank you. And Mr. Krieger, how much time do you need today? 15 minutes, and then three minutes for rebuttal, please. Sure. And Mr. Slavens, I'm sorry, how much time do you need today? I anticipate taking no longer than 15 minutes, Your Honor. Sure. Okay, that's fine. And if you find that you're running out of time, simply because we're asking lots of questions, generally, if we tell you you're out of time, just let us know if there's a point that you intended to make and you didn't get to that point. We're usually pretty good about giving a little bit of extra time, usually a minute or two, to sum up something that you had meant to argue but didn't get a chance to because of our questions. Sometimes we tend to ask a lot of questions. Okay. All right. So with that, Mr. Krieger, you can get started. Thank you, Your Honors. Good afternoon. May it please the court. Again, my name is Jonathan Krieger, and I'm here on behalf of Marcus Monroe. This afternoon, I plan to discuss arguments one and three in the briefs. First, the prosecutorial misconduct. In this case, the police officers followed my client on a hunch and claimed to see him as an object found to be a gun. The jury's response was relatively simple, to decide whether the officers' claims were credible. The prosecutors, however, pursued an irrelevant, inflammatory theme, one that sent my client in opposition to the jurors. The prosecutors' repeated return to this theme warrants a new trial. As shown in the briefs, one prosecutor began the initial closing argument. Isn't the question here, if you have the, why would we even get to that issue in this case? I disagree, Your Honor. This was a credibility contest, depending on whether the jury believed the two police witnesses. What do you mean by the credibility? I mean, who, where in the record, I mean, I read the transcript. Where is somebody questioning the credibility of the two officers? I mean, in closing arguments, the defense did, and it certainly doesn't. Well, I'm saying in the case, in the testimony, is there anything that is questionable about what the witnesses had to say? Absolutely. The officers had a chance to record the interaction, either with a microphone or with their squad video. They chose not to. But that's a peripheral issue that has nothing to do with whether they saw somebody throw a gun on the roof, and they went to the roof, retrieved the gun, there was nothing else anywhere else. Where's the credibility? I'm missing something. Just because the video of the car wasn't on, in fact, the testimony was they couldn't even see that from where the car was positioned. That was not the testimony. The only testimony was that the only video that they had was of the intersection. The officer could have put the video on, but chose not to. His claim was that it would blind the other officer who was in pursuit. I don't think those are peripheral issues, but even if we go to the points which you were saying are the core of the case, the recovery of the gun, the officer who recovered the gun couldn't answer well where it was on the roof when he recovered the gun. It's on the roof. I mean, what, you know, it's on the roof or it's not on the roof. I mean, does it really matter that exact spot on the roof? Why would that matter? I mean, again, you seem to be, you're talking about credibility, you know, I mean, where somebody picks up a gun on a roof, okay, he picked it up on the roof. What's the, you keep going down and- If the officers had documented the crime scene, then we could know that there wasn't anything else on the roof. We don't know what was on the ground. We know that. When they were asked about the search on the ground, the officer couldn't say how long they had searched the ground. But again, you said there's something about credibility. Where is it, you know, you're asking more questions, but that doesn't go to their credibility, what they testified to, where is the contrary testimony or everything that shows that they may not be credible? Under the Oathman case, I hope I'm pronouncing it right, there doesn't need to be another, in order for the evidence to be closely balanced, there can be sufficient flaws in the state's case rather than having two opposing witnesses say. And that's what happened in this case. I think it is significant if the officer can't answer basic questions about the recovery of the weapon. And I think these kinds of inconsistencies cast greater doubt on their overall account, which was basically that they followed my client on a hunch and then he began running. And then he discarded the weapon in a way so there couldn't be a Fourth Amendment violation that he would have abandoned it. And so I think the discrepancies and the flaws in the state's case undermines the remainder of the testimony. The claim to see my client having thrown something and the claim came to see the object found on the roof, allegedly found on the roof, taken off as a gun. How much cross-examination was done of the officers? They were cross-examined. I mean, they were cross-examined, I don't remember the exact pages versus the direct examination, but the questioning about the extent of the search and where the officer was vis-a-vis the roof, that was elicited in cross-examination. And Mr. Krieger, I just want to understand, I think what you're arguing right now is that the evidence can still be closely balanced, even if there's no evidence rebutting the evidence that's coming in, if the evidence that's coming in is questionable. That's what you're arguing, correct? Absolutely. That's my argument. Because basically the defense is not required to present any evidence whatsoever. And so if the evidence that the state is presenting is questionable, the case could still be closely balanced. That's your argument. That's right, Your Honor. That argument is- I understand your argument. Thank you. And that is supported by case on the Oathman case, the court held that there didn't need to be- the defense didn't need to present evidence. And I believe that it was supported by a quote from the Pietkowski Illinois Supreme Court case where they said exactly as you mentioned in your question, Justice Walker, that the state has the burden of presenting evidence, the defense doesn't, and so the defense doesn't need to present evidence to make it closely balanced. In the Heron case as well, it's not 100% clear, but it appears that the defense didn't present any evidence in that case. And Heron is the canonical plain air closely balanced evidence case in the court fund. It was balanced based on the flaws. And so it's our position that these flaws in this, the prosecutor, instead of producing this other evidence, this documentation, a clear account of the recovery of the gun filled it in with inflammatory comments. As shown in the briefs, the prosecutor began the initial closing argument by describing where you, that is the jurors, were on New Year's Eve, dinner, movies, spending time with loved ones. And then the prosecutor remarked, not this guy, and said my client was welcoming the new year in a completely different way by being a convicted felon and walking the streets with a loaded gun. The prosecutor- Let's go forward though. Why don't you play this all out using the plain air analysis? Why don't you go ahead and carry it out for us? Sure. So assuming this court does find that there was error, that there was an improper us versus them theme, there was no objection. So the issue would be forfeited unless we can show plain error. The argument with regard to the closely balanced evidence would be that because of the flaws in the state's case, that this could have been, the inflammatory argument could have the balance towards a guilty verdict. We know this wasn't an open and shut case. The jurors sent out a note asking about, there had been fingerprint testing, a stipulation as to fingerprint testing. They had a question about the stipulation. So obviously they had some question as to whether the gun that was recovered was what my client allegedly possessed or whether, in general, whether the officers claim that my client threw a gun into the roof was indeed credible. And so under the closely balanced evidence test, that would be, the question would be whether the error affected the ultimate verdict given the closeness of the evidence. And our position is that it did, that the court, excuse me, that the state's argument placed the jurors and the police on one side and my client on the other side. And this kind of inflammatory argument might've made the difference in the guilty verdicts that were returned. We can also argue the plain error under the fair trial, the second prong of the plain error test because of the repeated nature. This was argued several times in both initial closing and it was argued several times in initial closing. And once in the closing rebuttal, this theme was raised again and again. The courts have found that repeated instances of prosecutorial misconduct, improper themes qualify as plain error under the substantial rights. And for those reasons, we would ask that this court reverse my client's conviction and remand for a new trial. Do I have time to go into argument three? You do. Thank you. The trial court's consideration of my client's prior felony convictions was improper since the convictions were elements of the offense and thus cannot be used as aggravation. It is undisputed that the sentencing court cannot consider the elements of a crime in aggravation. For example, it can't consider the aggravating factor of bodily harm in a homicide case and it can't consider the aggravating factor of receiving compensation in a theft case. Is there a difference between the armed habitual criminal statute and the class X statute? Yes, there is a significant difference. Okay. And could you please explain what that difference is? So the mandatory class X statute is purely a sentencing statute. It only comes in after the defendant has been found guilty of the crime. The armed habitual criminal statute is itself a substantive offense. And so the elements of the prior convictions in that case are elements of the crime, which puts this case more in the category of the Hobbs decision, which found that the Hobbs decision rather than the mandatory class X context, which the Brown court relied on. So the general law is that if an element is used, if a defendant is found guilty of a and that's what happens if a defendant is convicted of an armed habitual criminal, those two priors have already been used. Now, if the defendant has other prior convictions, those could be used in aggravation. But the two qualifying ones are off limits. But in this case, the court relied exclusively on them in aggravation, said that my client, the PSI had showed his criminality and that he had spent time in the penitentiary. And as your honors know, you can only spend time in the penitentiary for felony convictions. And my client had only two felony convictions, the ones that were used to establish the crime. And so once my client had been found guilty of sentencing, those couldn't be used. And those were the only aggravating factors considered by the court. Well, why do you say that they were used? I mean, the PSI and his criminal background reflects in the trial reflected that he had two prior felonies. How does one put that out of their mind? It's a known fact. So how did this judge, Judge Lynn, use it as an additional aggravating fact? Well, obviously, Judge Lynn couldn't have kept it out of his mind. But if he had followed the law, he would know that he couldn't use it for aggravation. How did he use it as aggravation? Tell me why you say that. He said the PSI reflects his criminality. He spent time in the penitentiary. You only spend time in the penitentiary for felony convictions. And he only had two convictions. There weren't any other ones that this was a clear. Isn't that a statement of fact? I mean, it is a statement of fact. But that's something along the line of, normally, I give you six years in jail. But because you had these two prior convictions, I'm going to give you 12 years in jail. Then you could draw an inference that he penalized him for the same offenses that were part of the underlying conviction. But here he just said, you know, this is your background. I don't understand how that can be an aggravating double enhancement. So if your honor, if a court can mention an improper aggravating factor under the Hyder case, the question is whether you can prove that it didn't have, it played no role in the sentence that was imposed. And here was the only thing that was mentioned. It was the only comment in aggravation or mitigation. So the mere fact of mentioning it means that he used it as an aggravating factor? Well, we can't say that it played no role, which is the standard. So you're saying that if Judge Lynn had not even mentioned the two prior felony convictions in his review of the defendant's background, the sentence would not be subject to attack under this theorem? That's right, your honor, the courts are presumed to follow the law. In this case, the court mentioned it. It could play no role because it had already been used to establish the conviction. Well, but when you had your motion to reconsider, Judge Lynn actually specifically said that he could have gotten up to 30 years, but instead Judge Lynn gave him seven and a half years, 90 months. So it seems as though that Judge Lynn didn't consider anything because he basically gave him very close to the minimum sentence. So to now say that he aggravated his sentence because he mentioned criminality, just basically stating something that's in the PSI, which judges do very often. I mean, I know I would sometimes just read the PSI out loud. So I'm not sure I'm following you that he used them as aggravating factors. Maybe he used them as mitigating factors because he gave him the minimum sentence. Well, very close to it. If he gave him the minimum sentence, we wouldn't be raising an issue. He gave us above the minimum sentence. Right, but we're talking six years versus seven and a half years. Now you're talking, what, 85% of the time? There was significant mitigation in this case as well. The client was in a stable relationship. He took care of his stay-at-home dad. He went to church. He volunteered at his church food bank. There was mitigation here. There was very little that was aggravating about the crime itself. It was something that was instigated by the police on a hunch. He never displayed the weapon. He never fired the weapon. This was a minimum case, and the sentence that was imposed was above it. Again, look at the Heider decision. Can we say that it played no weight? It was the only thing that was mentioned, and that is why we can't say that it played no weight, and that's why my client should receive a new sentence in hearing. I'm sorry. No, go ahead. I think you'd have a non-argument. Judge Lynch has said, okay, I've heard everything. I've read everything. I'm familiar with the facts of the case, seven and a half years, okay? What could you possibly say about seven and a half years? You couldn't say it was excessive. I mean, you could argue it, but it wouldn't be successful. So along with what Judge Walker is saying, no evidence. There's nothing in the record that indicates that the fact that he had the two prior felonies aggravated the sentence he received. It was well within the statutory parameters. It was closer to the bottom than it was even to the middle third, and he just mentioned that you have two prior felony convictions. We take what judges say seriously. What is the saying? If it's on their lips, it's on their mind. He shouldn't have been mentioning it at all. It had already been used. It was improper. Then your argument would be that he didn't comply with the statute saying that you, or the rationale that you should explain why you give the sentence you give. I mean, what you're arguing for is for judges to say nothing. That's what you're arguing for. I am not. That is not my argument, your honor. I think judges should explain- It's the result of your argument. Judges should explain their rationales, but if judges make mistakes, then they should be held accountable for the mistakes that they made. This is not a radical position. Most judges do explain their rationales. In this case, the only rationale that was given was that my client had spent time in the penitentiary, that he had additional felonies. It wasn't that he spent time in the penitentiary there for seven and a half years. It was, this is his background. I am familiar with everything presented to me. This is his background, seven and a half years. I mean, you'd have a stronger argument if the judge would have indicated some way that we could reasonably infer that he would have gotten less time, but for these two other convictions. There's nothing to indicate that. It's the only thing you said, your honor. And it's a cold record, but it appears that he said it within the same breath. I mean, he said it, and then he imposed the higher sentence. I would just, again, ask your honors to look at the cases we cited about how once an improper factor is considered, that basically there's a presumption that it goes back for a new sentencing hearing unless you can say it played no way. And I don't think that we can say that in this case. My question following up on what Justice Pierce said is that the, looking at the policy question, judges have the ability to say nothing on this situation. And if this is the result of saying something, which was factual, then it's going to do just the opposite, I think, of what most defendants would want. And that is an explanation. To me, explanations are extremely important. And I don't like the present statute, but we're under it and we have to live with it. And that's the law. And so they often say nothing. And there'll be much more circumscript if we agree with your position, don't you think? Because now if they say anything factual, I'm looking at PSI, everything's before me and he says anything. Well, if he says anything in a situation like this, he's going to place himself or herself in a situation where it could come back. Judges are going to think twice. It's just easier because they're doing so many cases. And one case is like this, where the argument can be raised. Another case is so different. Just as a policy, some judges do have policies. They don't say anything except tell you, I looked at the statute, I'm following the statute, and that's all I have to do. I think you're right. I think most judges at sentencing, they go by their own policies unless there's an Illinois Supreme Court or an Appellate Court case. And you have to mention this. They're just going to do what they've been doing. And I would point out, it's not like in this case, Judge Lynn did a lot of explanation. He only said one thing. So under the current law, he said very little. But what he said was improper. He relied on improper. Now, you're saying, I know I've read many transcripts where judges, they read through the entire PSI, or they go through all of the factors in aggravation and all the factors in mitigation. And if that had been the case here, and the judge had gone through all of it, we would still have the same question. Did it play a role? But it would make my job a lot more difficult because I would have to say, well, he relied on this mention of the penitentiary, but he also mentioned that he had volunteered at the church. And he mentioned how it didn't actually, the actual offense itself didn't put anyone at risk. Then I would be in a more difficult situation. But that's not what happened in this case. The court gave a very limited rationale for the sentence, and it was an improper. Unless your honors have any more questions, I would ask that you reverse my client's conviction and remand for a new trial, or in the alternative, vacate his sentence and remand for a new sentencing hearing. Thank you, Mr. Krieger. And Mr. Slavins, we're up to you now. Good morning, your honors. May it please the court. My name is Zachary Slavins, and I represent the people of the state of Illinois in this case. The evidence in this case established that defendant fled from police officers through an object on top of the roof. Let's go right to the issue. Is this a close case? No, your honor, this is not a close case. Explain to us why it's not a close case. We know the facts. Yes, your honor. Your honor, the closeness of the evidence standard under first prong plain error looks to whether or not there are two equally plausible narratives such that any error alone could have tipped the scales of justice. That's not the case here. You have the credible testimony of two police officers who testified to a coherent singular narrative of events. But counsel's argument is a little different. Counsel's argument is that there's lots of open issues that were never tied up or discussed or asked about. And so there's not much there. There's a lot of speculation that one could make based upon just the little testimony that police officers gave. Not necessarily, your honor. Counsel's argument essentially goes to whether or not the people's case was sufficient. Not really whether or not it was close with an alternative explanation of these same events, which is what the first prong plain error analysis really looks at is whether or not you have the facts of the case and there are two competing explanations of it that are equally plausible. And that's not what we have here. Counsel's argument really simply points to a variety of evidence that certainly the people would like to have but was not present under this case. But that's not really the question is what other evidence in the abstract might have existed. The question is, what was the evidence actually adduced at trial and how close was that in balance to the opposing narrative case defense theory. And there's not any close balance here. The officers testified that they observed the individual defendant acting oddly. It aroused their suspicions. They were observing him. And when they made eye contact, he fled. The officer was only a couple of feet behind him when he saw him throw a metal object onto a specific garage roof. He apprehended him. And just a couple seconds to minutes later, they searched the roof. And the only thing up on the roof was a gun. Now, were the officers completely eloquent in their answering of specific questions about searching on the ground or how they were standing or specific natures of the roof? They might not have been perfectly eloquent but that's not really the question of whether or not the evidence was closely balanced. The testimony was credible. There were some points raised by defense counsel but there's no alternative explanation of these events that is equally plausible. And that is why the evidence was not closely balanced. However, to even get to the question of closely balanced, defendant first has to establish not only that an improper comment was made but that the comment was so clear and erroneous that it meets the standard for plain error. And that's also not the case here. At the end of the day, what we have are a couple of- From your standpoint, is that proper argument to refer or to imply that the jury, you were out doing this, we were all trying to do the right thing on New Year's. And then this guy, police was doing their job. We were doing what we normally do. And this guy, is that us versus them? Is that proper? Your Honor, the people argue that that is not an us versus them narrative. It's an argument that is based in the facts, the inferences and the common experiences of jurors, all of which is proper. It is a common experience of individuals, not just in this country, but in the world that New Year's Eve is celebrated with friends and family. The arguments about the remainder of this, that this was New Year's Eve, defendant was on a street corner, not at a party. The police officers were patrolling the street. That's the evidence of do stick trial. That is not an improper theme. And far from some of the comments in other cases where the court have held that they were improper, these are not things that are incendiary appeals to passionate prejudice. At most, these are passing narrative remarks that bookended the argument at the beginning and the end. It's a rhetorical flourish, but this isn't the sort of comments that enrage the jury, inflames their passions. This isn't like in Blue, where they ruled out a bloodstained police officer's uniform. This is far shorter than that. It's a comment to parties on New Year's Eve. And that doesn't rise to the level of plain error. It's not prosecutorial error to make comments about the evidence and to couch it in narrative format. Well, but it's no different than, and you probably haven't studied this, but it's no different than having the group of people with all the blue shoes on, and that guy over there has on red shoes. And next thing you know, the people with the blue shoes is discriminating against the guy with the red shoes on. And that's kind of the argument that seems to have been made. Not necessarily, well, Your Honor, at the end of the day, what the argument was, is defendant on New Year's Eve was out on a street corner armed with a firearm. And that is the accurate recitation of what the evidence at trial showed. And the people are allowed to make that argument. And case law is clear that the people may make arguments based on the common experiences of jurors. And there's certainly no credible argument to the contrary that New Year's Eve is not customarily celebrated in this country with family and friends. And at the end of the day, the singular passing, well, these passing remarks kind of bookending the beginning and end of a closing argument is a narrative tool. It's not something that is going to inflame the jury's passion. And counsel referenced the fact that the jury was asking for the stipulation as evidence that the evidence was closely balanced. The people would put it to this court that, you know, the fact that they were asking for the stipulation about the firearm is proof to this court that the jury was not distracted by statements about New Year's Eve parties. The jury was focused on what is the evidence? What are the facts? How do they fit up with the elements of the offense? So how are those arguments different from people versus Wheeler in which the prosecutor argued the jurors in contrast their sheltered lives to the rest of the dangerous people out there? Well, I think- How is that different? And I know people versus Wheeler, the case was reversed on the basis of the prosecutor's arguments. Yes, Your Honor. And the difference there would be apparent on the face of the comments, you know, saying, you know, sheltered existence, contrasting that with the defendants, you know, with the dangerous streets, those sorts of very clear appeals to passions, prejudices, fears, you know, that sort of very clear compare and contrast is where the issue comes from. And that's something that's not present in this case. And at the end of the day, this is, these are passing remarks. They are not a central focus. It comes at the beginning of closing argument, it comes at the end. The focus of the closing argument of the seven pages of the initial closing argument, it's the facts, it's the evidence. These handful of lines of the transcript at the beginning and end, we're not the central focus of the closing argument. And that's ultimately not the reason why defendant was convicted. And again, as previously mentioned, even if the court were to find some comments were improper, at the end of the day, the evidence here was not closely balanced. There are not two equally plausible narratives. And even if defendant, you know, has some arguments as to credibility of one witness in certain respects, the fact that there are some credibility issues does not necessarily make the evidence closely balanced. The SETI case makes clear, we look at whether or not there are two explanations of the facts and are they equally plausible such that an error alone could have tipped the scales. And that is not what we see here. To turn to the third sentencing issue, defendants argues that the court improperly considered his prior convictions. And that was the basis for his sentence. With respect to sentencing matters, the case law is well-established. The sentence within the range is presumptively proper. And certainly a seven and a half year sentence on a range of six to 30 years should be presumed proper. And it falls very much so on the lower end of the scale. Counsel is correct that the court's explanation of his sentence was not very elaborate, but that doesn't necessarily lend extra weight to his argument. The fact that he referenced his criminal history as represented in the PSI could also very well be referring to the fact that there were misdemeanor convictions represented in the PSI as well. Was it true that the state's argument in aggravation was simply that they reminded the court of the burglary and residential burglary convictions that were the basis for the armed habitual criminal conviction? I mean, was there anything more than what I just said that was the state telling the judge? Off the top of my head, I cannot recall anything more specific than that about the criminal history, but you know- If that's the only thing that the state told the judge, then that would explain why it was on his mind. It could, Your Honor, but the court also has the PSI, which details other things. And as Justice Pierce comments, there's nothing really here in the record to suggest that those convictions were what he was referring to when he decided to give him a seven and a half year sentence. And the fact that he references the prior time in the penitentiary, his criminal history, that can equally be construed to be referring to the defendant's potential for rehabilitation, which is probably- Really serious? You're saying that with a straight face, come on. Yes, Your Honor. That's pure speculation on your part. It seems to me it's far afield. To me, that's really an argument that I'm surprised he would make. Your Honor, it's no more speculation on the basis of a cold record than opposing counsel's argument that the court was expressly relying on elements of the offense to hand down a sentence. At the end of the day, we have- But here we have the state saying exactly what happened next when the judge picked up on what the state said. It's a little different. And to say that the judge wasn't thinking about penitentiary referring to something that he was going to do. I mean, it's just in the context, when you read it, that argument seems- You have better arguments than that, I'll put it that way. Well, Your Honor, that is what is reflected in the PSI. So this is all information that is before the judge. The fact that the prosecutor said it when it's already represented in the PSI, it does not necessarily mean that the judge is looking at these two things and saying, because he had two prior felony convictions, that's why I'm giving him an expanded sentence. Give me an example of a case where we would find that the judge did use the convictions improperly. Give me a hypothetical. A hypothetical would be if the court said, for example, because you've had these two prior convictions, I'm going to give you the seven and a half years. Something more clear cut than certainly a passing reference to a vague criminal history, not specifically saying that he's referring to expressly these two convictions. What else would he be expressly referring to? As the record indicates, his PSI does contain evidence of his other misdemeanor convictions, which is certainly still criminal history. And counsel's argument really tries to combine the time in the penitentiary with reference to criminal history. But again, it's a cold record. We're not sure how precisely he said it, if those were said in the same breath. And the fact is the PSI reflects a criminal history. He did serve time in the penitentiary. The judge is allowed to consider the capacity for rehabilitation. And at the end of the day, this is a seven and a half year sentence on a range of six to 30. That is presumptively proper. And the evidence here borne out by the record does not really establish that the court imposed double enhancement. And as the people argued in their brief, this wasn't necessarily preserved for review. The motion to reconsider sentence simply argued that the sentence was excessive. It did not raise the double enhancement argument expressly. Opposing counsel's reply brief did not address that. And this court should uphold the fact that this was not considered below because this could have been raised before the trial court. And we could have gotten a more clear indication of what was going on. It was not raised below. That's precisely why these issues are supposed to be preserved below. And if there are no further questions, the people would simply ask that this court affirm defendant's conviction and sentence. Okay, thank you, Mr. Slavins. And Mr. Krieger, we're back to you. Thank you. I just have two points. First, with regard to argument one, my opposing counsel argues that this case is not like Wheeler because there was no contrast between the defendant and the jurors or the police. And there absolutely was a contrast in opening in the beginning of the initial closing argument. The description of what most people do on New Year's Eve was not neutral. Even if it was perhaps based on common sense or common practice, it was used to place my client on one side of the world of a continuum and place the jurors on the other side. They said that most people are out at a party, not this guy. And in closing rebuttal, they argued that most people are at parties and my client was at 59th and Morgan with a gun. So there was a contrast similar to the contrast that occurred in Wheeler. My second point has to do with argument three. We did address forfeiture in both our opening and our reply. We cited the Johnson case, which held that an improper aggravation is a form of excessive sentence. An excessive sentence was raised in the motion to reconsider and the state simply ignored that. So the issue is preserved and the state has not shown harmless error. We would ask for the court to remand for a new sentencing hearing. Thank you. Okay. Thank you, Mr. Krieger. Thank you, Mr. Slavens. We appreciate your excellence here today in both your briefs and your argument. And that concludes our hearing. Have a good day.